IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

JEFF BERRY,

     Plaintiff,

v.                            CIVIL ACTION No. 1:07-00535

JIM RUBENSTEIN, DIVISION
OF CORRECTIONS, and
BRYANT SWAYNE,

     Defendants.


MEMORANDUM OPINION AND ORDER

     Pending before the court is the Unopposed Motion for Summary Judgment of Jim Rubenstein and the West Virginia Division of Corrections.  (Doc. No. 19.)  For the reasons set forth below, the motion is granted.

I.    Factual and Procedural History

     On July 26, 2007, the plaintiff, Jeff Berry, brought this civil action in the Circuit Court of McDowell County, West Virginia, against the West Virginia Division of Corrections ("WVDOC"), Jim Rubenstein, the Commissioner of the WVDOC, and the McDowell County Commission ("Commission").  (Doc. No. 1 at 6.) The Complaint alleges that Bryant Swayne, a correctional officer employed at the Stevens Correctional Center in Welch, West Virginia, dishonored him in violation of 42 U.S.C. § 1983.[1]  (Id.

_____

    [1] Specifically, the Complaint alleges that on December 16, 2005, Mr. Swayne forced Mr. Berry to disrobe in conformance with the color of authority granted a correctional officer to search

at 10-15.)  Mr. Berry seeks $300,000.00 in punitive damages from

Mr. Swayne.  (Id. at 12.)  The Complaint also alleges that Mr.

Rubenstein, the WVDOC and the Commission were negligent in

hiring, training, and supervising Mr. Swayne.  (Id.)  Mr. Berry

seeks $1,000,000.00 in general or compensatory damages against

both the WVDOC and the Commission.  (Id.)

On August 30, 2007, the WVDOC, with the consent of the

Commission and Mr. Swayne, pro se, timely removed Mr. Berry's

civil action to this court.  (Id. at 1-6.)  The court found

jurisdiction over this action pursuant to 28 U.S.C. § 1331, and

granted the Commission's motion to dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 18.)

Since that time, Mr. Rubenstein and the WVDOC have moved for

summary judgment arguing that (1) the plaintiff's § 1983 claim

against the WVDOC is barred by the Eleventh Amendment to the

United States Constitution; (2) the plaintiff's § 1983 claim

against Mr. Rubenstein must be dismissed because he has failed to

allege facts sufficient to sustain a claim for supervisory

liability; and (3) the plaintiff's state law negligence claim

against both the WVDOC and Mr. Rubenstein is barred by the public

duty doctrine.  (Doc. No. 19.)  The plaintiff has not responded

within the time allotted by Rule 7.1(c) of the Local Rules of

---

prisoners, fondled Mr. Berry's penis while masturbating, and
sprayed semen on Mr. Berry.  (Id.)

-2-

Civil Procedure.  Accordingly, the remaining defendants' motion
for summary judgment is ripe for review.

## II.  Standard of Review

Summary judgment is appropriate under Rule 56 of the Federal
Rules of Civil Procedure when no genuine issue of material fact
exists and the moving party is entitled to judgment as a matter
of law.  Once the moving party demonstrates the lack of evidence
to support the non-moving party's claims, the non-moving party
must go beyond the pleadings and make a sufficient showing of
facts presenting a genuine issue for trial.  Celotex Corp. v.
Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v.
Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  All inferences
must be drawn from the underlying facts in the light most
favorable to the non-moving party.  Matsushita, 475 U.S. at 587.
Summary judgment is required when a party fails to make a showing
sufficient to establish an essential element of a claim, even if
there are genuine factual issues proving other elements of the
claim.  Celotex, 477 U.S. at 322-23.

The fact that the plaintiff has failed to respond to the
defendant's motion for summary judgment does not absolve the
defendant of it burden of proof under Rule 56.  Custer v. Pan Am.
Life Ins. Co., 12 F.3d 410, 415-16 (4th Cir. 1993) ("Although the
failure of a party to respond to a summary judgment motion may
leave uncontroverted those facts established by the motion, the

moving party must still show that the uncontroverted facts entitle the party to 'judgment as a matter of law.'"); see also Fed. R. Civ. P. 56(e) ("[I]f the adverse party does not so respond, summary judgment should, if appropriate, be entered against that party.").

**III. Analysis**

**A.   Sovereign Immunity**

Federal claims against states for monetary damages are barred by the principle of sovereign immunity which is embodied in the Eleventh Amendment to the United States Constitution.[2] See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989).  Sovereign immunity extends not only to states, but also to state agencies and state officers acting in their official capacities.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 117 (1984); see also Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996) (explaining that sovereign immunity extends to arms of a state including state agencies and state officers acting in their official capacities).

The two exceptions to this bar occur only when a state waives its immunity, or if Congress exercises its power under the

---

[2]   The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Fourteenth Amendment to override that immunity.  Neither

exception, however, applies here.  West Virginia has not waived

its immunity under the Eleventh Amendment, nor did Congress, in

enacting § 1983, intend to provide a federal forum for litigants

who seek a remedy against a state for alleged deprivations of

civil liberties.  Will, 491 U.S. at 71 ("[N]either a state nor

its officials acting in their official capacities are 'persons'

under § 1983.").  Moreover, the WVDOC is an arm of the state and

is therefore immune from suit under the Eleventh Amendment.

Basham v. Corr. Med. Servs., Inc., No. 5:06-cv-00604, 2007 WL

2481338 *3 (S.D. W. Va. Aug. 29, 2007) (citing W. Va. Code §§ 25-

1-1 et seq.).  Accordingly, to the extent the plaintiff is

seeking damages from the WVDOC his claims are barred by the

Eleventh Amendment and must be dismissed.

**B.   Supervisory Liability**

     The Fourth Circuit has firmly held that supervisory

officials may be held personally liable in certain circumstances

for the constitutional injuries inflicted by their subordinates.

See Orpiano v. Johnson, 632 F.2d 1096, 1101 (4th Cir. 1980);

McCoy v. McCoy, 528 F. Supp. 712, 714 (N.D. W. Va. 1981) (Haden

J.) (explaining that a prisoner states a cause of action under 42

U.S.C. § 1983 where he alleges that the Commissioner of the WVDOC

has failed to supervise and control his subordinates who

personally deprived the inmate of his civil rights).

There is, however, no respondeat superior liability pursuant
to 42 U.S.C. § 1983.  See Monell v. Dep't of Soc. Servs., 436
U.S. 658 (1978).  "[L]iability will only lie where it is
affirmatively shown that the official charged acted personally in
the deprivation of the plaintiff's rights," Vinnedge v. Gibbs,
550 F.2d 926, 928 (4th Cir. 1977), or where a subordinate acts
pursuant to a policy or custom for which the supervisor is
responsible.  Fisher v. Wash. Metro. Area Transit Auth., 690 F.2d
1133, 1143 (4th Cir. 1982), abrogated on other grounds by County
of Riverside v. McLaughlin, 500 U.S. 44 (1991).

Specifically, a supervisor may be liable under § 1983 if the
following elements are established: "(1) the supervisor had
actual or constructive knowledge that his subordinate was engaged
in conduct that posed a 'pervasive and unreasonable risk' of
constitutional injury to citizens like the plaintiff; (2) the
supervisor's response to that knowledge was so inadequate as to
show 'deliberate indifference to or tacit authorization of the
alleged offensive practices;' and (3) there was an 'affirmative
causal link' between the supervisor's inaction and the particular
constitutional injury suffered by the plaintiff."  Shaw v.
Stroud, 13 F.3d 791, 799 (4th Cir. 1994).  Moreover, it has been
established that the plaintiff bears a heavy burden of proof
which cannot be satisfied by pointing to a single incident or
isolated incidents because "a supervisor cannot be expected to

promulgate rules and procedures covering every conceivable

occurrence within the area of his responsibility."  <u>Slakan v.</u>

<u>Porter</u>, 737 F.2d 368, 373 (4th Cir. 1984).

    In the instant case, the plaintiff has not alleged that Mr.

Rubenstein was aware inmates housed at the Stevens Correctional

Center were at risk of sexual assault from Bryant Swayne.  In

fact, the plaintiff even admits that the guards at the facility

"did not report their concerns."  (Doc. No. 11 at 2.)  Moreover,

prison officials did not become aware of Bryant Swayne's alleged

sexual misconduct until the plaintiff's attorney contacted West

Virginia State Trooper G.A. Bishop, who in turn notified Mr.

Rubenstein.  (Doc. No. 19-2 at 4-5 ("Okay, have you reported this

to anyone?  No, just my lawyer Paul Deltz").)

    Accordingly, the court finds that the plaintiff has not and

cannot allege facts sufficient to show that Mr. Rubenstein had

actual or constructive knowledge of the risk of constitutional

injury to the plaintiff.  Any supervisory liability claim that

the plaintiff may have asserted against Jim Rubenstein is

therefore dismissed.

**C.    State Law Negligence Claim**

    The West Virginia Constitution provides that the State

should never be made a defendant in any court of law or equity**.**

W. Va. Const. art. VI, § 35.  This provision, on its face,

provides the State and its agencies absolute immunity from suit.

-7-

Hesse v. State Soil Conservation Comm'n, 168 S.E.2d 293 (W. Va. 1969) (holding that grant of constitutional immunity extends to agencies of the state).  West Virginia Code Section 29-12-5a, a simple legislative act, supplies an exception to this constitutional immunity by requiring the State Board of Risk and Insurance Management to purchase insurance and requiring that such insurance policies shall provide that the insurer shall be barred from relying upon the constitutional immunity of the State of West Virginia.  Eggleston v. West Virginia Dep't of Highways, 429 S.E.2d 636, 638 (W. Va. 1993); Pittsburgh Elevator v. West Virginia Bd. of Regents, 310 S.E.2d 675, 685 (W. Va. 1983) (holding that suits which seek recovery under and up to the limits of the State's liability insurance coverage, rather than recovery of State funds, fall outside the traditional constitutional bar to suits against the State).

In the instant case, the plaintiff's Complaint seeks damages against Mr. Rubenstein and the WVDOC in the amount of $1,000,000.00 (Doc. No. 1.), a figure within the $1,000,000.00 liability limitation set forth in the policy of insurance issued to the WVDOC (Doc. No. 19-2 at 29).  Moreover, the policy of insurance issued to the WVDOC appears to cover the type of claim present here.  (Id. at 24-27.)  Consequently, the plaintiff's suit falls outside of the constitutional bar to suits against the State of West Virginia.  As discussed in further detail below,

-8-

however, the plaintiff's claims do fall outside of West

Virginia's public duty doctrine, a common-law doctrine granting

the State of West Virginia and its agencies immunity from civil

suits spared by the existence of a State insurance policy.  See

Walker v. Meadows, 521 S.E.2d 801, 806 (W. Va. 1999) (citing

Randall v. Fairmont City Police Dep't, 412 S.E.2d 737 (W. Va.

1991)).

Technically, there are two exceptions to the public duty

doctrine.  The first exception occurs where the applicable

insurance policy expressly provides that the public duty doctrine

does not apply.  Parkulo v. West Virginia Bd. of Prob., 483

S.E.2d 507, 522 (W. Va. 1996); Carey v. Dostert, 406 S.E.2d 678

(W. Va. 1991) (the mere presence of insurance purchased by the

State does not waive common-law immunities).  This exception does

not apply here, as the WVDOC's insurance policy does not even

mention the public duty doctrine.  (Id. at 11-64.)  Second, if a

"special relationship" existed between the state official and the

person harmed by the official's negligence, then the public duty

doctrine does not apply and liability may attach.  Parkulo, 483

S.E.2d at 519.

In order to prove the existence of this duty, often referred

to as a "special relationship," four requirements must be met:

(1) an assumption by the state governmental entity, through

promises or actions, of an affirmative duty to act on behalf of

the party who was injured, (2) knowledge on the part of the state governmental entity's agents that inaction could lead to harm, (3) some form of direct contact between the state governmental entity's agents and the injured party, and (4) that party's justifiable reliance on the state governmental entity's affirmative undertaking.  Tucker v. West Virginia Dep't of Corr., 530 S.E.2d 448, 450 (W. Va. 1999).  Moreover, the West Virginia Supreme Court of Appeals has held that even where a State agency has purchased liability insurance, the defense under the public duty doctrine applies, unless such insurance policy expressly waives or alters the public duty doctrine.  Jeffrey v. West Virginia Dep't of Pub. Safety, Div. of Corr., et al., 482 S.E.2d 226 (W. Va. 1997).

In the instant case, the court is unconvinced that there has been any form of direct contact between the plaintiff and Jim Rubenstein or WVDOC that would create a special relationship. Accordingly, the public duty doctrine applies to the facts of this case and bars the plaintiff's state law negligence claims.

**IV.  Conclusion**

For the reasons set forth above, the court hereby **GRANTS** the motion for summary judgement of Jim Rubenstein and the West Virginia Division of Corrections (Doc. No. 19.) and **DIRECTS** the Clerk to remove those parties from this suit.  The case shall proceed against Bryant Swayne.

The Clerk is further directed to mail a copy of this
Memorandum Opinion and Order to all counsel of record and any
unrepresented parties.

It is **SO ORDERED** this 25th day of April, 2008.

ENTER:

David A. Faber
United States District Judge